🄫COPY

1  THE WEISER LAW FIRM, P.C.
   KATHLEEN A. HERKENHOFF (168562)
2  12707 High Bluff Drive, Suite 200
   San Diego, CA 92130
3  Telephone: (858) 794-1441
   Facsimile: (858) 794-1450
4  kah@weiserlawfirm.com

5  Attorneys for Plaintiff

6  (Additional counsel listed on signature page)

7              UNITED STATES DISTRICT COURT

8            CENTRAL DISTRICT OF CALIFORNIA

9  ERIC SPITZER, Derivatively on Behalf of   ) Case No.
   MONSTER BEVERAGE CORPORATION               )
10                                            ) CV 13 - 00833 VAP (DTBx)
                      Plaintiff,              ) VERIFIED SHAREHOLDER DERIVATIVE
11                                            ) COMPLAINT FOR BREACH OF FIDUCIARY
           vs.                                ) DUTY, GROSS MISMANAGEMENT, ABUSE
12 RODNEY C. SACKS, HILTON H.                 ) OF CONTROL, AND UNJUST ENRICHMENT
   SCHLOSBERG, THOMAS J. KELLY,               )
13 HAROLD C. TABER JR., BENJAMIN M.           )
   POLK, NORMAN C. EPSTEIN, MARK S.           )
14 VIDERGAUZ, SYDNEY SELATI and               )
   HILROD HOLDINGS, L.P.,                     )
15                                            )
                      Defendants,             )
16                                            ) JURY TRIAL DEMANDED
        – and –                               )
17                                            )
   MONSTER BEVERAGE CORPORATION               )
18                                            )
                      Nominal Party.          )
19 _____ )

BY FAX

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS
MISMANAGEMENT, ABUSE OF CONTROL, AND UNJUST ENRICHMENT

**NATURE OF THE ACTION**

1.      Plaintiff Eric Spitzer ("Plaintiff"), by and through his undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") for the benefit of nominal defendant Monster Beverage Corporation ("Monster" or the "Company") against certain members of its Board of Directors (the "Board") and executive officers seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment.

2.      According to its public filings, Monster is a marketer and distributor of energy drinks and alternative beverages. The Company markets and distributes Monster Energy brand energy drinks, Monster Energy Extra Strength Nitrous Technology brand energy drinks, Java Monster brand non-carbonated coffee + energy drinks, X-Presso Monster brand non-carbonated espresso energy drinks, M3 Monster Energy Super Concentrate energy drinks, Monster Rehab non-carbonated rehydration energy drinks, Übermonster energy drinks, Worx Energy shots, and Peace Tea iced teas, as well as Hansen's natural sodas, apple juice and juice blends, multi-vitamin juices, Junior Juice beverages, Blue Sky beverages, Hubert's Lemonades, Vidration vitamin enhanced waters, and PRE Probiotic drinks.

3.      On August 9, 2012, defendants caused the Company to announce that it had received a subpoena from a state attorney general in connection with an investigation regarding Monster's advertising, promotion, ingredients, usage and sale of Monster Energy drinks.  It would soon be revealed that investigation was being conducted by the New York Attorney General ("NYAG").

4.      On this news, Monster's stock fell by $13.50 per share, or nearly 20%, over a two day period.

5.      On September 11, 2012, two U.S. Senators sent a letter to the U.S. Food and Drug Administration ("FDA"), asking the FDA to investigate the energy drink industry (including, specifically, Monster).

- 1 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS MISMANAGEMENT, ABUSE OF CONTROL, AND UNJUST ENRICHMENT

6.      During the period alleged herein (the "Relevant Period"), defendants caused the Company to: (i) engage in illicit activity regarding the promotion, marketing, advertising, ingredients, usage and sale of the Monster Energy brand of energy drinks; (ii) lack adequate internal and financial controls; and (iii) issue financial statements that were materially false and misleading at all relevant times.

7.      As a result of defendants' false and misleading statements, Monster's stock traded at artificially inflated levels.  During this time, while in possession of material, adverse, non-public information, certain of the defendants sold (or caused to be sold) shares of their Monster stock, for proceeds of over *$51 million.*  After the above revelations seeped into the market, the value of the Company's shares declined significantly.

8.      As a result of defendants' breaches, the price of the Company's stock still has not recovered.  Moreover, the Company has expended, and will continue to expend, significant money and resources in connection with the investigations.  Further, it is clear that certain defendants have received excessive compensation, due to the fact that the compensation was based (at least in part) on false financial results.

9.      Thus, the Company has been damaged.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiffs and defendants are citizens of different states and/or countries and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

11.      Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed

- 2 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS MISMANAGEMENT, ABUSE OF CONTROL, AND UNJUST ENRICHMENT

herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district. Additionally, nominal defendant Monster is headquartered in this district.

### THE PARTIES

12.    Plaintiff is a shareholder of Monster and has continuously held Monster shares since February 2012.  Plaintiff is a citizen of New Jersey.   Plaintiff delivered a copy of this complaint to the Board at Monster's executive offices prior to its filing.

13.    Nominal defendant Monster is a Delaware corporation with its executives offices located at 550 Monica Circle, Suite 201, Corona, California.  According to its public filings, the Company is a marketer and distributor of energy drinks and alternative beverages.

14.    Defendant Rodney C. Sacks ("Sacks") has served as the Chief Executive Officer ("CEO"), Chairman of the Board, and a director since November 1990.  Upon information and belief, defendant Sacks is a citizen of California.

15.    Defendant Hilton H. Schlosberg ("Schlosberg") has served as the Company's President, Chief Operating Officer ("COO"), Secretary, Vice Chairman of the Board, and a director since November 1990.  In addition, defendant Schlosberg has served as the Chief Financial Officer ("CFO") of Company since July 1996.  Upon information and belief, defendant Schlosberg is a citizen of California.

16.    Defendant Thomas J. Kelly ("Kelly") has served as the Company's Senior Vice President of Finance since August 2011, and Controller and Secretary since 1992.  Previously, defendant Kelly served as the Company's Vice President Finance from 2005 until June 2011.  Upon information and belief, defendant Kelly is a citizen of California.

- 3 -

17.     Defendant Harold C. Taber, Jr. ("Taber") has served as a director of the Company since July 1992. In addition, defendant Taber has served as a member of the Board's Audit Committee (the "Audit Committee") during the Relevant Period. Upon information and belief, defendant Taber is a citizen of California.

18.     Defendant Benjamin M. Polk ("Polk") has served as a director of the Company since November 1990. Upon information and belief, defendant Polk is a citizen of New York.

19.     Defendant Norman C. Epstein ("Epstein") has served as a director of the Company since June 1992. In addition, defendant Epstein has served as Chair of the Audit Committee during the Relevant Period. Upon information and belief, defendant Epstein is a citizen of the United Kingdom.

20.     Defendant Mark S. Vidergauz ("Vidergauz") has served as a director of the Company since June 1998. Upon information and belief, defendant Vidergauz is a citizen of California.

21.     Defendant Sydney Selati ("Selati") has served as a director of the Company since September 2004. In addition, defendant Selati has served as a member of the Audit Committee during the Relevant Period. Upon information and belief, defendant Selati is a citizen of California.

22.     Defendant Hilrod Holdings, L.P. ("Hilrod") is a Delaware Limited Partnership. Defendants Schlosberg and Sacks are Hilrod's general partners.[1] Upon information and belief, Hilrod maintains an office at 1010 Railroad Street, Corona, California 92882.

23.     Collectively, defendants Sacks, Schlosberg, Kelly, Taber, Polk, Epstein, Vidergauz, Selati and Hilrod shall be referred to herein as the "Defendants."

---

[1] Hilrod Holdings may include any or all of the following entities: Hilrod Holdings, L.P., Hilrod Holdings IV, L.P., Hilrod Holdings V, L.P., Hilrod Holdings VI, L.P., Hilrod Holdings VII, L.P., Hilrod Holdings VIII, L.P., Hilrod Holdings IX, L.P., Hilrod Holdings X, L.P., Hilrod Holdings XI, L.P., Hilrod Holdings XII, L.P.

- 4 -

24.     Collectively, defendants Sacks, Schlosberg, Kelly, Taber, Polk, Epstein, Vidergauz and Selati shall be referred to herein as the "Individual Defendants."

25.     Collectively, defendants Taber, Epstein and Selati shall be referred to herein as the "Audit Committee Defendants."

26.     Collectively, defendants Sacks, Schlosberg, Kelly, Selati and Hilrod shall be referred to herein as the "Insider Selling Defendants."

## THE INDIVIDUAL DEFENDANTS' DUTIES

27.     By reason of their positions as officers, directors, and/or fiduciaries of Monster and because of their ability to control the business and corporate affairs of Monster, the Individual Defendants owed Monster and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Monster in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Monster and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to Monster and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

28.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Monster, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Monster, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

29.     To discharge their duties, the officers and directors of Monster were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the

- 5 -

Company.  By virtue of such duties, the officers and directors of Monster were required to, among other things:

          (a)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

          (b)     Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

          (c)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

     30.     Pursuant to the Audit Committee's Charter, the members of the Audit Committee are required, *inter alia*, to:

          (a)     Review and discuss the Company's quarterly financial statements with management;

          (b)     Discuss with management any of the following: the adequacy and effectiveness of the accounting and financial controls, including the Company's system to monitor and manage business risk, and legal and ethical compliance programs;

          (c)     Confer with General Counsel as requested by General Counsel or by the Audit Committee and review legal issues and regulatory requirements; and

          (d)     Discuss at least annually the Corporation's policies with respect to risk assessment.

**SUBSTANTIVE ALLEGATIONS**

A.      **Background of the Company**

31.      According to its public filings, Monster is a marketer and distributor of energy drinks and alternative beverages. The Company markets and distributes Monster Energy brand energy drinks, Monster Energy Extra Strength Nitrous Technology brand energy drinks, Java Monster brand non-carbonated coffee + energy drinks, X-Presso Monster brand non-carbonated espresso energy drinks, M3 Monster Energy Super Concentrate energy drinks, Monster Rehab non-carbonated rehydration energy drinks, Übermonster energy drinks, Worx Energy shots, and Peace Tea iced teas, as well as Hansen's natural sodas, apple juice and juice blends, multi-vitamin juices, Junior Juice beverages, Blue Sky beverages, Hubert's Lemonades, Vidration vitamin enhanced waters, and PRE Probiotic drinks.

B.      **The Individual Defendants' False and Misleading Statements**

32.      On February 23, 2012, the Individual Defendants caused Monster to issue a press release that announced the Company's financial and operating results for the quarter and year ended December 31, 2011. For the quarter, the Company reported net income of $64.5 million, or $0.35 diluted earnings per share ("EPS") and net sales of $410 million, as compared to net income of $49 million or $0.26 diluted EPS and net sales of $319 million for the same period a year ago. For the year, the Company reported net income of $286 million, or $1.53 diluted EPS and net sales of $1.7 billion, as compared to net income of $212 million, or $1.14 diluted EPS and net sales of $1.3 billion for the same period a year ago.

33.      On February 29, 2012, the Individual Defendants caused the Company to file with the U.S. Securities and Exchange Commission (the "SEC") its annual report for the period ended December 31, 2011 on Form 10-K (the "2011 10-K"), which reiterated the Company's previously announced annual financial results and financial position.   The 2011 10-K was signed by the Individual

- 7 -

Defendants, and represented the following, in relevant part, concerning the Company's sales and marketing practices:

> Our sales and marketing strategy for all our beverages is to focus our efforts on developing brand awareness through image enhancing programs and product sampling. We use our branded vehicles and other promotional vehicles at events where we offer samples of our products to consumers. We utilize "push-pull" methods to enhance shelf and display space exposure in sales outlets (including advertising, in-store promotions and in-store placement of point-of-sale materials, racks, coolers and barrel coolers) to enhance demand from consumers for our products. We also support our brands with prize promotions, price promotions, competitions, endorsements from selected public and extreme sports figures, personality endorsements (including from television and other well known sports personalities), coupons, sampling and sponsorship of selected causes, events, athletes and teams. In-store posters, outdoor posters, print, radio and television advertising and coupons may also be used to promote our brands.

> We believe that one of the keys to success in the beverage industry is differentiation, making our brands and products visually distinctive from other beverages on the shelves of retailers. We review our products and packaging on an ongoing basis and, where practical, endeavor to make them different, better and unique. The labels and graphics for many of our products are redesigned from time to time to maximize their visibility and identification, wherever they may be placed in stores, which we will continue to reevaluate from time to time.

34.    In addition, the 2011 10-K contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX Certifications") signed by defendants Sacks and Schlosberg, stating that the financial information contained in the 2011 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.  The SOX Certifications set forth the following:

I, [Rodney Sacks/Hilton Schlosberg], certify that:

1.    I have reviewed this annual report on Form 10-K of Monster Beverage Corporation;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

- 8 -

4.     The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

   a.   designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   b.   designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

   c.   evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

   d.   disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent function):

   a.   all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b.   any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

*     *     *

In connection with the annual report of Monster Beverage Corporation (the "Company") on Form 10-K for the year ended December 31, 2012 as filed with the Securities and Exchange Commission (the "Report"), the undersigned, [Rodney C. Sacks, Chairman of the Board of Directors and Chief Executive Officer of the Company/ Hilton H. Schlosberg, Vice Chairman of the Board of Directors, President, Chief Operating

- 9 -

Officer, Chief Financial Officer and Secretary of the Company], certifies, pursuant to 18 U.S.C. 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that:

1. The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

2. The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

35.     On May 9, 2012, the Individual Defendants caused Monster to issue a press release announcing its financial and operating results for the quarter ended March 31, 2012.  For the quarter, the Company reported net income of $76 million, or $0.41 diluted EPS and net sales of $454.6 million, as compared to net income of $55 million, or $0.29 diluted EPS and net sales of $356.4 million for the same period a year ago.

36.     On May 10, 2012, the Individual Defendants caused the Company to file with the SEC a quarterly report for the period ended March 31, 2012 on Form 10-Q.  The Form 10-Q was signed by defendant Sacks, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX Certifications signed by Sacks and Schlosberg which were substantially similar to those set forth above.  The Form 10-Q also contained representations concerning the Company's sales and marketing practices that were substantially similar to those contained in the Form 10-K filed with the SEC on February 29, 2012.

37.     During the Relevant Period, the Individual Defendants caused the Company to: (i) engage in illicit activity regarding the promotion, marketing, advertising, ingredients, usage and sale of the Monster Energy brand of energy drinks; (ii) lack adequate internal and financial controls; and (iii) issue financial statements that were materially false and misleading at all relevant times.

**C.     The Truth Begins to Emerge**

38.     On August 8, 2012, after the market closed, the Individual Defendants caused Monster to disclose its financial and operating results for the quarter ended June 30, 2012, with the results being

- 10 -

below analysts' estimates. Specifically, for the quarter, the Company reported net income of $109.8 million, or $0.59 diluted EPS and net sales of $593 million, as compared to net income of $84 million, or $0.45 diluted EPS and net sales of $462 million for the same period a year ago. More profoundly, the Company's net sales of $593 million and $0.59 diluted EPS, were below analysts' estimates of net sales of $596 million and $0.61 diluted EPS, respectively.

39.     On this news, Monster stock declined $6.57 per share, or nearly 10%, to close at $61.20 per share on August 9, 2012.

40.     On August 9, 2012, after the market closed, the Individual Defendants caused the Company to file with the SEC a quarterly report for the period ended June 30, 2012 on Form 10-Q, which reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX Certifications signed by Sacks and Schlosberg which were substantially similar to those set forth above.

41.     The Form 10-Q disclosed the following concerning an investigation into the Company's advertising practices:

> *State Attorney General Inquiry* — In July 2012, **the Company received a subpoena from a state attorney general in connection with an investigation concerning the Company's advertising, marketing, promotion, ingredients, usage and sale of its Monster Energy® brand of energy drinks.** As the investigation is in an early stage, it is unknown what, if any, action the state attorney general may take against the Company, the relief which may be sought in the event of any such proceeding or whether such proceeding could have a material adverse effect on the Company's business, financial condition or results of operations. [Emphasis added.]

42.     On this news, Monster stock declined an additional $6.93 per share, or nearly 11%, to close at $54.27 per share on August 10, 2012.

- 11 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS MISMANAGEMENT, ABUSE OF CONTROL, AND UNJUST ENRICHMENT

1    43.    On August 28, 2012, *The Wall Street Journal* ("*WSJ*") published an article entitled "New

2    York Probes Energy-Drink Makers."[2]  The article revealed that the NYAG had subpoenaed Monster,

3    seeking information about the Company's marketing and advertising practices.  The article stated that

4    the probe was focused on whether the Company was misleading consumers with inaccurate labeling and

5    advertising, particularly with respect to overstating the benefits of certain ingredients while understating

6    the role of caffeine.  For example, Monster's 16-ounce can states that it contains caffeine, but does not

7    state how much caffeine.  The NYAG was also investigating whether the addition of guarana (a source

8    of caffeine) violated laws that banned putting multiple sources of caffeine in one beverage without

9    disclosing the overall amount.

10   44.    In a letter dated September 11, 2012, U.S. Senators Richard Blumenthal and Richard

11   Durbin wrote to the Commissioner of the FDA, stating the following, in relevant part:

> We write in response to your August 10, 2012, letter regarding proposed actions the Food and Drug Administration (FDA) should take to address rising health concerns around energy drinks.

> We were pleased to learn that the FDA intends to release final guidance distinguishing liquid dietary supplements from beverages.  The current ambiguity between conventional foods and dietary supplements leaves room for some food and beverage products to circumvent safety standards, such as those required for foods additives.  We encourage the agency to issue the final guidance in a timely manner.  Final guidance could help FDA and industry properly characterize products as dietary supplements and beverages.  Further, considering that most energy drinks are currently marketed as dietary supplements, the final guidance could help clarify which energy drinks are in fact beverages and subject to greater regulatory oversight.

> Your letter did not address one of our greatest concerns, which include the potential interactions and cumulative effects of additives with stimulant properties in energy drinks with high levels of caffeine.  While ginseng and other additives were not mentioned, your letter reviews taurine and guarana, which are generally regarded as safe (GRAS) food additives when used to add flavor.

---

[2] Article available at:
http://online.wsj.com/article/SB10000872396390444230504577615690249123150.html?KEYWORDS=Monster+energy+drink

- 12 -

We ask you to explain how the Agency determines that taurine and guarana when used at varying concentrations are added to energy drinks for flavoring uses as opposed to non-flavoring uses, such as providing a stimulating effect. The front of Red Bull cans feature taurine prominently on the label next to "vitalized body and mind." The placement and prominence of taurine on the label may suggest the additive is used for non-flavor purposes. We ask FDA to provide additional information on the safety of multiple additives with stimulating properties in energy drinks when used in combination and with caffeine.

A second area of concern that was not adequately addressed in FDA's review of health risks posed by caffeine is the failure to consider the unique health risks associated with consuming high levels of caffeine among young people. Your letter stated that an updated assessment by the FDA on caffeine consumption in the United States found that most caffeine is consumed through caffeine naturally present in coffee and tea. Unfortunately, there was no assessment of the shifting consumption patterns among young people, who are major energy drink consumers. Further, the letter's review of safety concerns posed by caffeine appears to use healthy adults' ability to consume 400 milligrams (mg) of caffeine as the standard for measuring potential health risks.

Products with names like Monster Energy, Red Bull, Rockstar, Full Throttle, and AMP are marketed to young people, and the marketing has worked – 30 to 50 percent of adolescents report consuming energy drinks. Your letter notes that a healthy adult can consume up to 400 mg of caffeine a day, but the American Academy of Pediatrics recommends that adolescents consume no more than 100 mg of caffeine daily. Additionally, numerous studies cite that young people are especially susceptible to suffering adverse health effects due to consuming large quantities of caffeine.

While we recognize the FDA's efforts to assess caffeine consumption in the United States, young people are not small adults. Therefore determinations on the safety of caffeine should not be based solely on healthy adults. We ask the FDA to include adolescents and children in their assessment of the safety risks posed by consuming high levels of caffeine, such as those in energy drinks.

We also urge the FDA to assert its authority to regulate the level of caffeine in energy drinks marketed as beverages. FDA currently limits caffeine in soft drinks to .02 percent or less of the product – about 71 mg in a 12oz soda. Your letter stated that, "the Agency has not challenged the use of caffeine in other beverages at levels comparable to the prior-sanctioned use level of 200 ppm." A November 22, 2011, Drug Abuse Warning Network report by the Substance Abuse and Mental Health Service Administration (SAMHSA) cites levels of caffeine in energy drinks ranging from 80 to 500 mg per serving. These levels are well above the prior-sanctioned use limit of .02 percent in soda and the 50 mg of caffeine in many 12oz sodas. Many energy drinks are sold in single-use 8 to 32oz cans right next to soft drinks. The FDA currently regulates caffeine levels in soft drinks. We urge the agency to assert its regulatory authority over caffeine levels in energy drinks marketed as beverages.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS MISMANAGEMENT, ABUSE OF CONTROL, AND UNJUST ENRICHMENT

45.     Thereafter, Monster stock fell from $56.36 per share on September 11, 2012, to close at $50.78 per share on September 12, 2012.

46.     As a result of the Individual Defendants' breaches, the price of the Company's stock still has not recovered.  Moreover, the Company has expended, and will continue to expend, significant money and resources in connection with the investigations.  Further, it is clear that certain defendants have received excessive compensation, due to the fact that the compensation was based (at least in part) on false financial results.

**D.     The Insider Selling**

47.     During the Relevant Period, while in possession of material, non-public, adverse information, defendants Sacks and Schlosberg (through defendant Hilrod) and defendants Kelly and Selati (in their individual capacities) sold 776,324 shares of Monster stock at artificially inflated prices, reaping proceeds of *over $51 million*.  The illicit Relevant Period insider trading is detailed in the following chart:

| Date | | Shares | | Proceeds ($) |
|---|---|---|---|---|
| Jun 13, 2012 | Kelly | 16,324 | Sale at $76.04 per share. | 1,241,276 |
| Jun 12, 2012 | Hilrod | 40,000 | Sale at $75.27 per share. | 3,010,799 |
| Jun 11, 2012 | Hilrod | 110,000 | Sale at $75.30 per share. | 8,283,000 |
| May 23, 2012 | Hilrod | 116,623 | Automatic Sale at $70.14 - $71.48 per share. | 8,258,000 |
| May 22, 2012 | Hilrod | 20,000 | Automatic Sale at $70 per share. | 1,400,000 |
| May 21, 2012 | Hilrod | 163,377 | Automatic Sale at $70.34 per share. | 11,491,938 |
| May 13, 2012 | Selati | 10,000 | Sale at $70.92 per share. | 709,200 |
| Mar 1, 2012 | Hilrod | 111,134 | Sale at $57.63 - $58.35 per share. | 6,445,000 |
| Feb 29, 2012 | Hilrod | 90,000 | Sale at $57.41 per share. | 5,166,900 |
| Feb 28, 2012 | Hilrod | 98,866 | Sale at $57.19 per share. | 5,654,146 |
| *Totals:* | | *776,324* | | *$51,660,239* |

- 14 -

48.     These financial gains realized by the Insider Selling Defendants came at the expense of Monster and, as a result of this breach of fiduciary duty, the Insider Selling Defendants should be compelled to disgorge proceeds from these stock sales and return such funds to Monster.

## DERIVATIVE AND DEMAND ALLEGATIONS

49.     Plaintiff brings this action derivatively in the right and for the benefit of Monster to redress the breaches of fiduciary duty and other violations of law by Defendants.

50.     Plaintiff will adequately and fairly represent the interests of Monster and its shareholders in enforcing and prosecuting its rights.

51.     The Board currently consists of the following seven (7) directors: defendants Sacks, Schlosberg, Taber, Polk, Epstein, Vidergauz and Selati.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful and useless act, for the following reasons:

(a)     During the Relevant Period, defendants Sacks and Schlosberg, through defendant Hilrod, sold 752,000 shares of Monster stock for gross proceeds of $49,709,763, based on their possession of material, adverse, non-public information regarding the Company's operations.  Thus, defendants Sacks and Schlosberg are directly interested in a demand due to their receipt of material, personal financial benefits from challenged insider trading transactions which were not shared with Monster shareholders.  Accordingly, demand upon defendants Sacks and Schlosberg is futile;

(b)     During the Relevant Period, defendant Selati sold 10,000 shares of his personally held Monster stock for gross proceeds of $709,200, based on his possession of material, adverse, non-public information regarding the Company's operations.  Thus, defendant Selati is directly interested in a demand due to his receipt of material, personal financial benefits from challenged insider trading transactions which were not shared with Monster shareholders.  Accordingly, demand upon defendant Selati is futile;

- 15 -

(c)    The principal professional occupation of defendant Sacks is his employment with Monster as its CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.  In addition, according to the Company's Proxy Statement filed with the SEC on Form DEF 14A on April 19, 2013 (the "2013 Proxy"), the Individual Defendants have admitted that defendant Sacks is not independent.  Thus, defendant Sacks lacks independence from demonstrably interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.  In addition, defendant Sacks is directly interested in this action  due to his illicit insider sales through Hilrod Holdings, as set forth above.  As such, any demand upon defendant Sacks is futile;

(d)    The principal professional occupation of defendant Schlosberg is his employment with Monster as its President, COO, CFO and Secretary, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.  In addition, according to the 2013 Proxy, the Individual Defendants have admitted that defendant Schlosberg is not independent.  Thus, defendant Schlosberg lacks independence from demonstrably interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.  In addition, defendant is directly interested in this action due to his illicit insider sales through Hilrod Holdings, as set forth above.  As such, any demand upon defendant Sacks is futile;

(e)    Defendant Polk lacks independence from defendants Sacks and Schlosberg because he and law firms that he has been a partner in have served as Monster's outside counsel for twenty years..  This began in 1992, when defendant Polk was a partner at the law firm Winston & Strawn LLP ("Winston & Strawn").  At that time, Monster retained Winston & Strawn as its outside counsel.  In 2004, defendant Polk began work at Schulte Roth & Zabel LLP ("Schulte Roth & Zabel").  At that time, Monster retained Schulte Roth & Zabel as its outside counsel, netting defendant Polk and his partners millions of dollars.  Since 2006, Defendants have caused the Company to pay Schulte Roth

- 16 -

& Zabel $18.5 million to act as Monster's outside counsel (including $4 million in 2011 alone).  Thus, due this longstanding professional relationship pursuant to which he has received millions of dollars and pursuant to which there exists the threat of withdrawal of such business, there exists reasonable doubt that defendant Polk lacks independence from defendants Sacks and Schlosberg, rendering defendant Polk unable to impartially consider a demand against them.  Thus demand on defendant Polk is futile;

(f)     At relevant times, defendants Taber, Epstein and Selati served as members of the Audit Committee.  Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee were and are responsible for, *inter alia*, reviewing the Company's annual and quarterly financial reports and reviewing the integrity of the Company's internal controls.  Defendants Taber, Epstein and Selati breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted the Company to disseminate false and misleading statements in the Company's SEC filings and other disclosures and caused the above-discussed internal control failures, which resulted in the investigations described above.  Therefore, defendants Taber, Epstein and Selati each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile;

(g)     Defendants Sacks, Schlosberg, Taber, Polk, Epstein, Vidergauz and Selati (i.e. the entire Board) each signed the false and misleading 2011 10-K.  The 2011 10-K was materially false and misleading because (among other things) it contained false statements about the Company's internal controls and marketing practices.  Thus, defendants Sacks, Schlosberg, Taber, Polk, Epstein, Vidergauz and Selati each face a substantial likelihood of liability for their breach of fiduciary duties, and any demand upon them is futile.

- 17 -

1

**COUNT I**

2

3

**AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY
FOR DISSEMINATING FALSE AND MISLEADING INFORMATION**

4

52.     Plaintiff incorporates by reference and realleges each and every allegation set forth

5

above, as though fully set forth herein.

6

53.     As alleged in detail herein, each of the Individual Defendants (and particularly the Audit

7

Committee Defendants) had a duty to ensure that Monster disseminated accurate, truthful and complete

8

information to its shareholders.

9

54.     The Individual Defendants violated their fiduciary duties of care, loyalty, and good faith

10

by causing or allowing the Company to disseminate to Monster shareholders materially misleading and

11

inaccurate information through, *inter alia*, SEC filings, press releases, conference calls, and other public

12

statements and disclosures as detailed herein.  These actions could not have been a good faith exercise

13

of prudent business judgment.

14

55.     As a direct and proximate result of the Individual Defendants' foregoing breaches of

15

16

fiduciary duties, the Company has suffered significant damages, as alleged herein.

17

**COUNT II**

18

**AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF
FIDUCIARY DUTIES FOR FAILING TO MAINTAIN INTERNAL
CONTROLS**

19

20

21

56.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set

22

forth herein.

23

57.     As alleged herein, each of the Individual Defendants (and particularly the Audit

24

25

Committee Defendants) had a fiduciary duty to, among other things, exercise good faith to ensure that

26

the Company's financial statements were prepared in accordance with GAAP, and, when put on notice

27

28

- 18 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS
MISMANAGEMENT, ABUSE OF CONTROL, AND UNJUST ENRICHMENT

of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

58.     The Individual Defendants willfully ignored the obvious and pervasive problems with Monster's internal controls and practices and procedures and failed to make a good faith effort to correct these problems or prevent their recurrence.

59.     As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages.

## COUNT III

### AGAINST THE INDIVIDUAL  DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR FAILING TO PROPERLY OVERSEE AND MANAGE THE COMPANY

60.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

61.     The Individual Defendants owed and owe Monster fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants specifically owed and owe Monster the highest obligation of good faith, fair dealing, loyalty and due care.

62.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

63.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Monster has sustained significant damages, not only monetarily, but also to its corporate image and goodwill.

64.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

65.     Plaintiff, on behalf of Monster, has no adequate remedy at law.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS MISMANAGEMENT, ABUSE OF CONTROL, AND UNJUST ENRICHMENT

## COUNT IV

### AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT

66.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

67.     By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Monster.

68.     Plaintiff, as a shareholder and representative of Monster, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches.

## COUNT V

### AGAINST THE INSIDER SELLING DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR INSIDER SELLING AND MISAPPROPRIATION OF INFORMATION

69.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

70.     At the time of the stock sales set forth herein, the Insider Selling Defendants were in possession of material, adverse, non-public information described above, and sold Monster common stock on the basis of such information.

71.     The information described above was proprietary non-public information concerning the Company's marketing practices, financial condition, business operations and future business prospects. It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Monster common stock.

72.     At the time of their stock sales, the Insider Selling Defendants knew that the Company was illicitly marketing its products, lacking adequate internal controls, and issuing false and misleading

- 20 -

1   financial statements.   The Insider Selling Defendants' sales of Monster common stock while in

2   possession and control of this material adverse, non-public information was a breach of their fiduciary

3   duties of loyalty and good faith.

4           73.     Since the use of the Company's proprietary information for their own gain constitutes a

5   breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of

6   a constructive trust on any profits the Insider Selling Defendants obtained thereby.

7

8           74.     Plaintiff, on behalf of Monster, has no adequate remedy at law.

9                                            **COUNT VI**

10          **AGAINST THE INDIVIDUAL DEFENDANTS FOR ABUSE OF CONTROL**

11          75.     Plaintiff incorporates by reference and realleges each and every allegation contained

12  above, as though fully set forth herein.

13          76.     The Individual Defendants' misconduct alleged herein constituted an abuse of their

14  ability to control and influence Monster, for which they are legally responsible.   In particular,

15  Defendants abused their positions of authority by causing or allowing Monster to misrepresent material

16

17  facts regarding its marketing practices, financial position and business prospects.

18          77.     As a direct and proximate result of the Individual Defendants' abuse of control, Monster

19  has sustained significant damages.

20          78.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the

21
22  Company.

23          79.     Plaintiff, on behalf of Monster, has no adequate remedy at law.

24                                           **COUNT VII**

25          **AGAINST THE INDIVIDUAL DEFENDANTS FOR GROSS MISMANAGEMENT**

26          80.     Plaintiff incorporates by reference and realleges each and every allegation set forth

27  above, as though fully set forth herein.

28                                              - 21 -

81.     The Individual Defendants had a duty to Monster and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Monster.

82.     The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Monster in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, the Individual Defendants breached their duties of due care, diligence and candor in the management and administration of Monster's affairs and in the use and preservation of Monster's assets.

83.     During the course of the discharge of their duties, the Individual Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet the Individual Defendants caused Monster to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Monster, thus breaching their duties to the Company.  As a result, the Individual Defendants grossly mismanaged Monster.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.     Directing Monster to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a

- 22 -

1  vote a proposal to strengthen the Board's supervision of operations and develop and implement

2  procedures for greater shareholder input into the policies and guidelines of the Board;

3          C.      Awarding to Monster restitution from Defendants, and each of them, and ordering

4  disgorgement of all profits, benefits and other compensation obtained by the Defendants;

5          D.      Awarding to Plaintiff the costs and disbursements of the action, including reasonable

6  attorneys' fees, accountants' and experts' fees, costs, and expenses; and

7

8          E.      Granting such other and further relief as the Court deems just and proper.

9                                          **JURY DEMAND**

10         Plaintiff demands a trial by jury.

11 DATED:  May 03, 2013                    THE WEISER LAW FIRM, P.C.

12

13

14                                         KATHLEEN A. HERKENHOFF (168562)

15                                         12707 High Bluff Drive, Suite 200
                                           San Diego, CA 92130
16                                         Telephone: 858-794-1441
                                           Facsimile: 858-794-1450
17
                                           THE WEISER LAW FIRM, P.C.
18                                         ROBERT B. WEISER
                                           BRETT STECKER
19                                         JEFFREY CIARLANTO
                                           22 Cassatt Avenue, First Floor
20                                         Berwyn, PA 19312
                                           Telephone: (610) 225-2677
21                                         Facsimile:  (610) 408-8026

22
                                           RYAN & MANISKAS, LLP
23                                         KATHARINE M. RYAN
                                           995 Old Eagle School Rd., Suite 311
24                                         Wayne, PA 19087
                                           Telephone:  (484) 588-5516
25                                         Facsimile:  (484) 450-2582

26
                                           Counsel for Plaintiff
27

28                                              - 23 -
        VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, GROSS
              MISMANAGEMENT, ABUSE OF CONTROL, AND UNJUST ENRICHMENT

## VERIFICATION

I, Eric Spitzer, under penalty of perjury, state as follows:

I am the Plaintiff in the above-captioned action. I have read the foregoing Complaint and authorized its filing. Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

DATED: 4/26/13

Eric Spitzer

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

## EDCV13- 833 VAP (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=== === === === === === === === === === === === === === === === === === ===

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
   **312 N. Spring St., Rm. G-8**
   **Los Angeles, CA 90012**

[ ] **Southern Division**
   **411 West Fourth St., Rm. 1-053**
   **Santa Ana, CA 92701-4516**

[X] **Eastern Division**
   **3470 Twelfth St., Rm. 134**
   **Riverside, CA 92501**

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| ERIC SPITZER, Derivatively on Behalf of MONSTER BEVERAGE CORPORATION | CASE NUMBER |
|---|---|
| PLAINTIFF(S)  v.  RODNEY C. SACKS, HILTON H. SCHLOSBERG, SEE ATTACHMENT A FOR ADD'L DEFENDANTS | 13 - 00833 VAP (DTBx) |
| DEFENDANT(S). | **SUMMONS** |

TO:    DEFENDANT(S):                                                          BY FAX

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Kathleen A. Herkenhoff _____, whose address is The Weiser Law Firm, P.C., 12707 High Bluff Drive, # 200, San Diego, CA 92130 ____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

TERRY NAFISI

Clerk, U.S. District Court

Dated: MAY - 3 2013

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                          SUMMONS

ATTACHMENT "A" TO SUMMONS   (Defendants)


THOMAS J. KELLY, HAROLD C. TABER JR., BENJAMIN M. POLK, NORMAN C. EPSTEIN, MARK S. VIDERGAUZ, SYDNEY SELATI and HILROD HOLDINGS, L.P.,

Defendants,

– and –

MONSTER BEVERAGE CORPORATION

Nominal Party.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Eric Spitzer, Derivatively on behalf of Monster Beverage Corporation

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Rodney C. Sacks, Hilton H. Schlosberg, Thomas J. Kelly, Harold C. Taber, Jr., Benjamin M. Polk, Norman C. Epstein, Mark S. Vidergauz, Sydney Selati and Hilrod Holdings, L.P. and Monster Beverage Corporation

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Kathleen A. Herkenhoff, THE WEISER LAW FIRM, P.C.
12707 High Bluff Drive, # 200, San Diego, CA 92130
Phone: 858-794-1441

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☐ 2. U.S. Government Defendant
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Jurisdictionally under 28 U.S.C. § 1332(a)(2) and jurisdictionally under 28 U.S.C. §1367(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** ☐ 463 Alien Detainee | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 510 Motions to Vacate Sentence | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 530 General | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 535 Death Penalty | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** ☐ 310 Airplane | **PERSONAL PROPERTY** ☐ 370 Other Fraud | **Other:** ☐ 540 Mandamus/Other | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 340 Marine | **BANKRUPTCY** | **FORFEITURE/PENALTY** | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** ☐ 440 Other Civil Rights | **LABOR** | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other ☐ 448 Education | ☐ 790 Other Labor Litigation ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:** ED CV 13 - 00833 VAP (DTBx)

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

CV-71 (02/13)   CIVIL COVER SHEET   Page 1 of 2

MAY - 3 2013

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New Jersey |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside, Orange, San Diego | New York |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Kathley H Wherly_   DATE: 05/03/2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |